AUSA:   Nicholas McIntyre          Telephone: (313) 226-9611
Task Force Officer:   Kylie Churches, ATF          Telephone:  (313) 202-3400

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
  v.

Jamal Hancock

Case No.

Case: 2:25−mj−30535
Assigned To : Unassigned
Assign. Date : 8/21/2025
Description: RE: SEALED MATTER (EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ August 4, 2025 to August 6, 2025 _____ in the county of _____ Wayne _____ in the _____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Kylie Churches, Task Force Officer, ATF
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __August 21, 2025_____

City and state: __Detroit, MI_____

_____
*Judge's signature*

Hon. David R. Grand, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Kylie Churches, being duly sworn, depose and state the following:

## I. INTRODUCTION

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and make arrests of offenses enumerated under Federal law.

2. I have been a Task Force Officer (TFO) with ATF since March 2022, and I have had extensive law enforcement training, including at the Detroit Police Department Training Center. In addition to being a TFO with the ATF, I have been employed as a police officer with the City of Detroit for approximately six years. I also have a bachelor's degree in criminal justice.

3. I make this affidavit from personal knowledge based on my participation in this investigation, including interviews conducted by myself and/or other law enforcement officers, communications with others who have personal knowledge of the events and circumstances described herein, review of reports by myself and/or other law enforcement officers, and information gained by my training

and experience. This affidavit does not include all the information known to law enforcement related to this investigation.

4.      The ATF is currently conducting a criminal investigation concerning Jamal HANCOCK (DOB: XX/XX/1993), for violations of 18 U.S.C. § 922(g)(1) as a felon in possession of a firearm.

## II.      PROBABLE CAUSE

5.      I reviewed records related to HANCOCK's criminal history and learned the following:

   a.      On or about April 16, 2013, HANCOCK was convicted by plea of one count of delivery/manufacture of cocaine, less than 50 grams. On June 10, 2013, HANCOCK waws sentenced to 47 days in jail.

   b.      On or about June 5, 2015, HANCOCK was convicted by plea of one count of possession of less than 250 grams of cocaine. On June 30, 2015, HANCOCK was sentenced to two years of probation.

   c.      On January 24, 2019, HANCOCK was convicted of fleeing and eluding, third degree, police officer assaulting/resisting/

2

obstructing, causing injury, and police officer, assaulting/ resisting/obstructing. HANCOCK was sentenced on March 13, 2019.

6.    Based on my training and experience, defendants are warned of the maximum penalty when they enter a plea of guilty to a felony. Additionally, defendants are advised that they are pleading guilty to a felony. Based on the number of prior felony convictions, the time he has spent under supervision as a result of his convictions, and the severity of his convictions, there is probable cause to believe that HANCOCK is aware of his status as a convicted felon.

## II.    PROBABLE CAUSE

7.    On August 4, 2025, at approximately 6:00 p.m. Detroit Police were dispatched to Fourth Street and Peterboro, in Detroit, Michigan after a 911 caller reported that hearing shooting in the area. The caller told dispatch that after hearing the gunshots, they saw a man running towards Grand River. The caller reported that the man was wearing a tan jogging suit and was carrying a gun in his hand.

8.    Police officers canvassed the area and found several fired cartridge casings on Third Street, near Charolette (approximately one block from Forth and Peterboro). Evidence techs responded to the scene and located and seized 15 fired 9mm cartridge casings.

3

9.      Contemporaneous with the 911 call, police officers with the Wayne State Police Department patrolling in the area saw a black Dodge Ram driving recklessly. Officers followed the vehicle to Detroit Receiving Hospital. At the hospital,  officers watched Adult Victim 1 get out of the driver's seat of the vehicle, bleeding from his abdomen.  Adult Victim 1 ran into the hospital. Adult Victim 1 later reported to police that he was in the area of Fourth Street and Peterboro Street when he was shot.

10.      Officers from the Detroit Police Department went to Detroit Receiving Hospital to gather more information about the shooting. At the hospital, Adult Witness 1 approached the officers. Adult Witness 1 told police that they received information that HANCOCK did the shooting. Adult Witness 1 reported that they saw HANCOCK 30 to 40 minutes before the shooting, and he was wearing a tan jogging suit. Adult Witness 2 provided HANCOCK's phone number. Adult Witness 1's identity is known to law enforcement. Adult Witness 1 has a close relationship with HANCOCK and has known HANCOCK for more than a decade.

11.      Approximately 90 minutes after the shooting, at approximately 7:35 PM on August 4, 2025, Detroit Police Dispatch received a second 911 call about the shooting. In the second call, an anonymous 911 caller reported that Jamal HANCOCK was responsible for the earlier shooting, but the caller erroneously

4

reported that the shooting had happened about twenty minutes prior to the call. The caller reported that HANCOCK's address was 4*** Saint Antoine. The caller said that HANCOCK was in a neighbor's house at the time of the call. The caller reported that they had just seen HANCOCK.

12.     On August 5, 2025, police officers obtained surveillance video recordings from the area of Third Street and Peterboro on the night of the shooting of Adult Victim 1. The video partially captured the shooting. In the video, Adult Victim 1's truck is parked on the west side of Third Street. A person wearing what appears to be a tan jogging suit approached the truck from behind. As the person got closer, they ran up to the truck and appeared to raise their arm towards the truck. The person went partially out of camera view as they walked up towards the driver door, but the recording, which also captured audio, recorded the sound of gunfire. The man in tan then fled, and the truck drove away.

13.     On August 5, 2025, Members of Detroit Police Department executed a search warrant at the residence on the 4600 block of Saint Antoine Street. HANCOCK was in the home and officers arrest him for the shooting. During a search of the home, police found two boxes of 9mm ammunition. In the basement, police located and seized a tan hoodie and tan pants.

5

14.     While he was incarcerated at the Detroit Detention Center, HANCOCK made phone calls on a recorded line. Officers reviewed those calls. In one call placed by HANCOCK to C.W., an adult woman., HANCOCK told C.W. to "clean the laundry in the basement." HANCOCK repeatedly asked C.W. to wash the clothes. HANCOCK specified that he wanted C.W. to wash the clothes, "up under them." HANCOCK warned C.W. to be careful when she washed the clothes. HANCOCK told C.W. not to let the children in the basement until she washed the clothes. HANCOCK called a second time and asked if C.W. had done the laundry. Based on the context of the conversation, police believed that HANCOCK was discussing evidence hidden in the laundry in the basement of the residence on the 4600 block of Saint Antoine Street.

15.     Police officers obtained a second warrant to search the residence on the 4600 block of Saint Antoine Street. During the second search, on August 6, 2025, police recovered a Glock, 43x, 9mm pistol from a pile of laundry in the basement.

16.     On August 14, 2025, ATF TFO Joshua Scott contacted ATF Interstate Nexus Expert, Special Agent Kevin Rambus, and provided information about the Glock 43x, 9mm handgun. SA Rambus concluded that the firearm was manufactured outside the State of Michigan and is a firearm as defined in Title 18 U.S.C., Chapter 44, Section 922(a)(3).

## III.    CONCLUSION

17.    Probable cause exists to believe that between August 4, 2025, and August 6, 2025, Jamal HANCOCK knowingly possessed a firearm after having been convicted of a felony offense, in violation of 18 U.S.C. Section 922(g)(1). This violation occurring within the Eastern District of Michigan.

Respectfully submitted,

_____
Kylie Churches,  Task Force Officer
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
Honorable David R. Grand
United States Magistrate Judge

Dated: August 21, 2025

7